Per Cueiam :
This case was referred to Trial Commissioner William E. Day with directions to make recommendation for conclusions of law on plaintiff’s motion and defendant’s cross-motion for summary judgment. The commissioner has done so in a report and opinion filed on April 7,1967. On May 8, 1967, plaintiff filed a request for review and the case is submitted to the court on the briefs of the parties previously filed and oral argument of counsel. Since the court is in agreement with the opinion, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Therefore, plaintiff is not entitled to recover, plaintiff’s motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted and the petition is dismissed.
*1215 Commissioner Day’s opinion,* as modified by the court, is as follows:
This is a contract case in which cross motions for summary judgment have been filed by the parties. The plaintiff’s petition is for breach of contract to install new lighting in the United States State Department Building in Washington, on the ground that the defendant arbitrarily refused to permit a cheaper method of installation of fixtures (use of toggle bolts), use of B.X. wire cable rather than flexible conduit and use of two bolts for fastening ballasts rather than the four bolts insisted upon by the defendant.
The defendant, on May 20, 1966, moved for issuance of summons (pursuant to Buie 28(e)) against the plaintiff’s surety on its performance bond in the amount of the contract price of $101,101, to appear as a party plaintiff and answer the counterclaim asserted by the defendant. The summons did issue pursuant to such motion, against The National Surety Corporation, 2001 Wisconsin Avenue, N.W., Washington, D.C. It was duly served on Mr. C. Haines (agent) on June 18,1966. The National Surety Corporation has not appeared, but will be answerable in the event the defendant is ultimately successful on its counterclaim.[1]
Each of the three items of claim involves the question of the interpretation of specifications. In each instance, the contracting officer decided the dispute adversely to the plaintiff. The plaintiff appealed such adverse decisions of the contracting officer to the General Services Administration[2] Board of Contract Appeals. That board, after a hearing at which testimony on behalf of both parties was heard, rendered a decision denying the plaintiff’s appeal.
The contract in suit was entered into on May 23, 1963. It was a fixed price contract with the usual provisions (including a disputes clause) on Standard Form 23 Construction Contract. The contract price was $101,101. The work was to *1216 be performed in accordance with designated specifications and drawings.
TOGGLE BOLTS
The pertinent provision of the specification required that “Fixtures shall be substantially mounted to ceiling supports.” Work under the contract began on August 19,1968, with the plaintiff’s forces installing the lighting fixtures utilizing toggle bolts by which the fixtures were attached to the metal lath of the suspended ceilings. By September 4, 1963, when something less than one-fifth of the fluorescent lighting fixtures had been thus installed, the plaintiff was advised by a letter from the GS A that the method of mounting the fixtures was at variance with the contract requirements since paragraph 5-19 of the job specifications required that fixtures shall be substantially mounted to ceiling supports. Based upon the evidence before it, the Board of Contract Appeals determined that the metal lath to which the ceiling plaster was bonded was not a ceiling support as that term is used in the specifications, but was a part of the ceiling itself. The suspended ceiling was described by the witnesses who testified at the hearing as consisting of the slab (being the underside of the floor above) from which wire hangers protrude at about 16-inch intervals. The wire hangers were fastened to one and one-half inch metal channels to which the metal lath attached. The two witnesses called by the defendant— Mr. Zmuda, supervisor of electrical construction for the region including Washington, D.C. for GSA and Mr. Boss, a graduate civil engineer — both testified that the metal lath is an integral part of the ceiling itself as distinguished from a support for such ceiling. Upon consideration of the entire record, the decision of the appeal board is supported by substantial evidence. It is to be noted that the plaintiff was not required to remove those fixtures which it had installed with toggle bolts. A contract change order was issued (apparently satisfactory to the plaintiff) which reflected a credit to the defendant for the installation of those fixtures.
CLAIM; RELATING TO CONDUCT
The pertinent contract specifications relating to this claim read as follows:
*1217 4-12 RIGID CONDUIT
All conduits, where required, shall be rigid, zinc-coated steel conforming to Federal Specification W WC-581a, using fittings conforming to Federal Specification W-F-406. The minimum size of conduit shall be % inch.
❖ K* * * *
A-19 WIRING METHODS
$ $ H* H: $
Flexible metal conduit may be used in ceilings. Home runs shall be installed in conduit or E.M.T. [electric metallic tubing].
A dispute arose during the performance of the work when the plaintiff used B.X. cable in areas in the ceiling where the GSA insisted upon the use of flexible metal conduit (commercial greenfield). After certain discussions between the parties, the contracting officer directed that, although GSA would accept the B.X. cable installations which had been installed (provided a proper credit was given to the Government “for the variance with contract requirements,”) all future wiring connections be made with flexible metal conduit (commercial greenfield) not less than y2 inch trade size. The plaintiff appealed the contracting officer’s decision and evidence was received by the GSA Board of Contract Appeals on this item of claim.
B.X. cable has a flexible metal covering (called armor) with the wiring or conductors installed by the cable manufacturer. The flexible metal conduit is similar to the metal covering of the B.X. cable, except that it has a larger inside diameter to permit the insertion of the wires at the site of the work.
The plaintiff argues that since the word “may” appears in paragraph 4-19 of the specifications, it was reasonable for it to use B.X. cable which it regarded as a comparable substitute.
The Board of Contract Appeals, correctly it would appear, points out that the applicable contract drawing which indicated where new wiring was to be placed in the ceilings specifically used the words “existing conduit” and “new con *1218 duit.” It was also pointed out that paragraph A-12 of the specifications provides that all conduits where required “shall be rigid * * and that the permission given in paragraph 4r-19 was a departure from the requirement as to use of rigid conduit but not a departure from the requirement that conduit be used.
In effect, the board held that the specifications and the drawings required the use of conduit but permitted the use of flexible, rather than rigid, metal conduit in ceilings. Since B.X. cable is not conduit, its use was not in accordance with the specifications and drawings. The action taken by the board on the plaintiff’s appeal is supported by the record.
MOUNTING OF BALLASTS
The contract specifications contained a provision (incorporated by reference) requiring that each ballast for fluorescent lamps be mounted with four bolts and nuts, specifying the size and location thereof. It reads in part as follows:

Fl/aorescent Lamp Ballasts

40. Each ballast shall be designed to start and operate satisfactorily the type of fluorescent lamp required in the particular fixture and shall conform to the current practice and requirements of the “Certified Ballast Manufacturers”, unless they are of unusual types for which “certified” types are not available commercially. Ballasts shall be of the high power factor type in sizes in which they are available commercially. Multi-lamp ballasts for operation of rapid start types of lamps may be of the series-sequence type. Multi-lamp ballasts for operating preheat and instant types of lamps shall be of the lead-lag type. Ballasts shall be securely fastened in place with mounting surface of ballast making as complete contact with surface of ballast mounting area of fixture as practical. Ballasts having four (4) mounting holes shall be attached to the mounting surface of the fixture by means of four (4) bolts and nuts of the machine screw thread type, not smaller than the No. 8-32 size (two at each end of ballast) and shall be fitted with lock washers. Bolts shall be provided with suitable means to prevent turning. * * *
On August 9, 1963, the plaintiff submitted to the GSA certain catalogue material relating to the light fixtures to be *1219 installed under the contract in suit. On August 15,1963, GSA representatives wrote to the plaintiff, in part as follows:
* * * # *
The following Catalogue Material is approved as noted for use in the work, subject to all contract requirements and revisions:
* * :|: * *

GSA No. 11302/#2

Steelcraft Lighting Fixtures — Subject to U.L. label and correction of light leaks.
* % ‡ # H*
On September 27,1963, the contracting officer wrote to the plaintiff as follows:
Lighting fixtures for your contract to Improve Lighting at the State Department, Contract No. GS-03B-11302, were approved subject to having acrylic plastic lens, correction of light leaks and having Underwriter’s Laboratory labels. To date the lighting fixtures on the job site do not have Underwriter’s Laboratory labels. Continued installation of these fixtures will be at your own risk and expense.
Please advise what action you intend taking to insure that these fixtures comply with all contract requirements.
The plaintiff contends that the last quoted letter should estop the defendant from requiring the mounting of ballasts with four bolts. Its claim is obscure in that nowhere in any of the writings between the parties as to approval by the Government was there any mention of mounting bolts for ballasts. In brief, it argues that the physical sample submitted for approval had only two bolts by which the ballast was fastened to the fixture. In the transcript of the board hearing, at page 89, this is shown not to 'be the fact as the plaintiff’s president, replying to a question by the chairman testified there were four mounting [bolt] holes on the ballasts when submitted.
The evidence does not support the plaintiff’s estoppel contention. On the other hand, it supports the contracting officer’s decision as upheld by the board decision.

The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The necessary facts are stated in the opinion.

 The defendant has withdrawn its counterclaim and the plaintiff does not now contest an amount withheld by the defendant for other work performed.

 Hereinafter referred to as GSA.